UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

STACY MAKHNEVICH,

                    Plaintiff,               **MEMORANDUM & ORDER**
                                             21-CV-05516 (KAM)(VMS)

        - against -

GREGORY S. BOUGOPOULOS; NOVICK EDELSTEIN
POMERANTZ, P.C.,

                    Defendants.

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Stacy Makhnevich, proceeding *pro se*, brings
this action against Defendants Gregory S. Bougopoulos and Novick
Edelstein Pomerantz, P.C. (collectively, the "Novick Firm"),
asserting violations of the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York
Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 *et seq.*, and the
New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-
101 *et seq.* Plaintiff claims that Defendants engaged in unfair
debt collection practices and unlawful discrimination against her
during the course of state court litigation to recover condominium
charges and other fees assessed against Plaintiff.

        Defendants now move for summary judgment on Plaintiff's
claims pursuant to Federal Rule of Civil Procedure 56. Defendants

1

have complied with Local Civil Rules 56.1 and 56.2.  For the reasons set forth below, Defendants' motion for summary judgment is GRANTED as to the FDCPA claim, ADA claim, and as to Plaintiff's claim for declaratory relief.  Plaintiff's claims under the NYHRL, N.Y. Exec. Law § 296 *et seq.*, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.* are DISMISSED without prejudice.

## BACKGROUND

The court finds that the following facts are not in genuine dispute, based on the parties' 56.1 statements, declarations, exhibits, and docket.[1]

### I.   State Court Proceedings

The court will briefly summarize the parties' underlying state Civil Court Action, in part by reference to the detailed overview previously provided in *Makhnevich I*.  *See* 2022 WL 939409, at *2-3 (E.D.N.Y. Mar. 29, 2022).  On November 25, 2015, Defendant Novick Firm filed a complaint against Plaintiff, on behalf of the Board of Managers of Plaintiff's condominium ("Condo Board").  The complaint sought $7,283.16 in unpaid common charges, assessments, and late fees, (collectively "condo fees") as well as attorney's fees in excess of $2,500.00.  *Id.* at *1.  On April 18, 2018, the state court awarded summary judgment to the Condo Board against Plaintiff as to liability for unpaid condominium common charges

---

[1] All pin citations to the record refer to the page number assigned by the court's CM/ECF system.

and fees.  (ECF No. 38-25 ("Pl.'s 56.1") ¶ 3; ECF No. 37-20 at 3-6.)

After a December 2018 jury trial, the state court ordered that judgment be entered against Plaintiff "in the total amount of $16,264.62, together with statutory costs and statutory interest to commence from July 1, 2017."  (ECF No. 37-21 at 3; *see also* Pl.'s 56.1 ¶ 4.)  That Decision & Order noted that the "attorneys' fees due and owing associated with this matter will be issued in a separate order and judgment after an attorney fee hearing has concluded."  (ECF No. 37-21 at 3.)  On August 29, 2019, the state court entered judgment against Ms. Makhnevich in the amount of $40,936.60, the sum of the jury's verdict, the award of attorneys' fees, interest, and certain court costs.  (ECF No. 37-28.)

## II.  Parties' First Federal Action: *Makhnevich I*

Ms. Makhnevich commenced her first federal action by filing a complaint on January 16, 2018 against the Novick Firm, Mr. Bougopoulos, and the Condo Board, alleging violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, and section 349 of New York's General Business Law ("GBL").  *See Makhnevich v. Bougopoulos, Novick, Edelstein, Lubell, Reisman, Wasserman & Leventhal P.C.*, 2022 WL 939409, at *1, *3 (E.D.N.Y. 2022) ("*Makhnevich I*"); (*see also Makhnevich I*, ECF No. 1.)[2]  On November 19, 2018, the court granted

---

[2] Defendant Novick Firm has since changed its name to Novick Edelstein Pomerantz, P.C. (*Makhnevich I*, ECF No. 85.)

Plaintiff's motion for leave to file an amended complaint based on Defendants' consent. (*Makhnevich I*, 11/19/18 Minute Order.) Plaintiff then filed an amended complaint that same day. (*Makhnevich I*, ECF No. 58.)  By Memorandum and Order dated March 29, 2022, the court granted Defendants' motion for summary judgment as to Plaintiff's FDCPA claims, and dismissed Plaintiff's GBL claims without prejudice after declining to exercise supplemental jurisdiction per 28 U.S.C. § 1367(c)(3). *See Makhnevich I*, at *17.  Judgment was entered against Plaintiff accordingly on March 30, 2022.[3]

### III.  **This Action**

As part of her opposition to Defendants' motion for summary judgment in *Makhnevich I*, Plaintiff included a "motion for leave to file supplemental complaint." (*Makhnevich I*, ECF No. 176-1 at 34-36.)  Plaintiff did so despite the court's order that she "may not further amend the complaint or file additional motions without a court order granting permission to do so." (*Makhnevich I*, 11/19/18 Minute Order.)  On August 17, 2021, Plaintiff filed a new action against Defendants in the United States District Court for the Southern District of New York, which subsequently transferred the case to this court.  As a result, in *Makhnevich I*, this court denied Plaintiff's motion to "supplement" her complaint

---

[3] Plaintiff has filed an appeal to the Second Circuit from the final judgment in *Makhnevich I*.  The appeal is currently pending.

as moot, because Plaintiff raised her "supplemental" claims in her second action filed in the Southern District of New York. The court stated that the "allegations of disability discrimination" raised in Plaintiff's second action would be adjudicated at a subsequent date. *Makhnevich I*, at *4.

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the court must resolve all ambiguities and draw all

reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Finally, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

Because Plaintiff is *pro se*, the court is obliged to liberally construe Plaintiff's submissions and read them "to raise the strongest arguments they suggest." *Campbell v. We Transport, Inc.*, 847 F. App'x 88, 88-89 (2d Cir. 2021) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)). Plaintiff's *pro se* status, however, "d[oes] not eliminate [her] obligation to support [her] claims with some evidence to survive summary judgment." *Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F.

App'x 616, 618 (2d Cir. 2020). Plaintiff's "reliance on 'conclusory allegations' and 'unsubstantiated speculation'" will not suffice. *Id.* (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

## DISCUSSION

### I.   Plaintiff's FDCPA Claim

#### A. Legal Standard

"Congress enacted the FDCPA to protect against abusive debt collection practices likely to disrupt a debtor's life." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (quotations and citation omitted). "[W]hether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (citation omitted). "The hypothetical least sophisticated consumer does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotations and citation omitted).

#### B. FDCPA Statute of Limitations

As a threshold matter, FDCPA claims must be brought within one year of the allegedly violative act or omission. 15 U.S.C. § 1692k(d). An FDCPA violation occurs "when an individual

is injured by the alleged unlawful conduct." *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 83 (2d Cir. 2019); *Scavone v. Frontline Asset Strategies, LLC*, 2020 WL 589641, at *5 ("[T]he latest date upon which the one-year period begins to run is the date when a plaintiff receives an allegedly unlawful communication.") (citation omitted).

Here, the "affirmation" at issue was served upon Plaintiff via email on August 13, 2020. (ECF 37-29 ("08/11/20 Aff.") at 2.)[4] Plaintiff claims that because she moved for leave to file a supplemental complaint in July 2021 (in *Makhnevich I*), her additional FDCPA claims are not time-barred. (ECF No. 38 ("Pl. Opp.") at 18.) Plaintiff was not granted leave to file a supplemental pleading with the added FDCPA and discrimination claims, but instead filed a new complaint in the Southern District of New York on August 17, 2021. (ECF No. 1.) In *Makhnevich* I, Plaintiff's "motion for leave" to file a supplemental complaint

---

[4] Plaintiff alleges that she "received a copy of Bougopoulos' fraudulent affirmation" on August 18, 2020. (ECF No. 12 ("Am. Compl.") ¶ 44.) Defendant Bougopoulos has produced an email dated August 13, 2020 in support of his Affidavit (ECF 37-1 ("Bougopoulos Decl." ¶ 36.)), demonstrating that the affirmation was emailed to Plaintiff on August 13, 2020. (08/11/20 Aff. at 1); *see, e.g., Couch v. AT&T Services, Inc.,* 2014 WL 7424093, at * 6 (E.D.N.Y. Dec. 31, 2014) ("[M]ere denials of receipt are insufficient to rebut the presumption that the emails were received.") (citing *Manigault v. Macy's East, LLC*, 2009 WL 765006, at *7 (2d Cir. Mar. 25, 2009) (finding that plaintiff's denial of receipt of a mailing is insufficient to rebut the presumption that she received the mailing)). Here, Plaintiff has not produced any evidence that she received the emailed affirmation on August 18, 2020, i.e., she has not overcome the rebuttable presumption that she received the August 13, 2020 email with Defendant Bougopoulos' affirmation on August 13, 2020. As such, despite Plaintiff's argument, the court deems August 13, 2020 the date that the alleged violation occurred for the purposes of assessing the timelines of Plaintiff's FDCPA claim.

(included within her opposition to Defendants' first summary judgment motion), was deemed moot as a result of the second action filed on August 17, 2021.  *Makhnevich I*, 2022 WL 939409, at *4.  Without the actual grant of Plaintiff's motion for leave to supplement her *Makhnevich I* amended complaint and without the court's permission to file a second action, the allegations therein have no legal effect, because the additional FDCPA claims were not brought within the FDCPA's one-year statute of limitations.  When a party has filed an untimely amended or supplemental pleading without the opposing party's written consent or obtaining prior leave of court, the amended or supplemental pleading is without legal effect and may be stricken.  *See, e.g., Chevron Corp. v. Donziger*, 2013 WL 624648, at *2 n.5 (S.D.N.Y. Feb. 20, 2013) (citing *Murray v. Archambo,* 132 F.3d 609, 612 (10th Cir. 1998) ("Generally speaking, an amendment that has been filed or served without leave of court or consent of the defendants is without legal effect.")); *see also U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("The failure to obtain leave results in an amended complaint having no legal effect. Without legal effect, it cannot toll the statute of limitations period."); *McKenzie v. Obertean*, 2021 WL 5286667, at *1-2 (2d Cir. Nov. 15, 2021) (affirming the district court's denial of plaintiff's motion for leave to file a supplemental complaint and citing "Fed. R. Civ. P. 15(a)(1)-(2) (except under conditions not

relevant here, 'a party may amend its pleading only with the opposing party's written consent or the court's leave'); Fed. R. Civ. P. 15(d) ('[T]he court may, on just terms, permit a party to serve a supplemental pleading')."

Plaintiff also argues that, regardless of the date that her motion for leave was filed, equitable tolling applies to her FDCPA claim by virtue of Executive Order 202.8, issued on March 20, 2020.[5]  (Pl. Opp. at 18-19.)  The Executive Order, issued by then-Governor Andrew Cuomo, tolled civil litigation deadlines from March 20, 2020 until April 19, 2020.

Courts in this Circuit have distinguished federal claims that borrow state statute of limitations (such as claims brought under 42 U.S.C. § 1983) from federal statutes that provide their own statutes of limitations, such as the FDCPA.  *See McDonald v. City of New York*, 2022 WL 1469395, at *3 (E.D.N.Y. May 10, 2022) ("Because section 1983 does not provide for a federal statute of limitations, but instead borrows the state statute of limitations, these courts have determined that the Executive Order [202.8] applies to section 1983 and other federal cases involving New York's statutes of limitations"); *see also Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (per curiam) ("While state law supplies the statute of limitations for claims under [section] 1983, **federal**

---

[5] *See* Exec. Order No. 202-8 (Mar. 20, 2020), https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.8.pdf.

**law determines when a federal claim accrues.**") (internal citation and quotation omitted) (emphasis added).  Under this reasoning, the court declines to apply equitable tolling to Plaintiff's FDCPA claim when, as stated above, § 1692k(d) of the FDCPA already provides that a claim must be brought within one year of the allegedly violative communication.

C. Merits

The only FDCPA-related allegations in Plaintiff's Amended Complaint in this action that were not previously asserted during *Makhnevich I* involve an affirmation that Defendant Bougopoulos submitted on August 13, 2020, during the parties' state court litigation.[6]  (ECF No. 12 ("Am. Compl.") ¶¶ 42-56.)  For the reasons set forth herein, even assuming, arguendo, that Plaintiff's new FDCPA claim was timely — which it is not — the Court finds that, on the merits, there is no genuine issue of

---

[6] In the instant action, the "Factual Allegations" section of the Amended Complaint regarding the FDCPA substantially duplicates (largely word for word) the allegations in Plaintiff's opposition to the motion for summary judgment in *Makhnevich I*.  (*Compare* Am. Compl. ¶¶ 24-40, with *Makhnevich I*, ECF No. 176-1, at 6-12.)  The doctrine of collateral estoppel (issue preclusion) bars "an issue of ultimate fact [that] has once been determined by a valid and final judgment" from being "litigated between the same parties in any future lawsuit."  *Schiro v. Farley*, 510 U.S. 222, 232 (1994).

The Amended Complaint in this second federal action is dated November 20, 2021.  At that time, this court had not yet adjudicated the Defendants' summary judgment motion against Plaintiff's largely identical claims in *Makhnevich I*.  To the extent FDCPA-related allegations in this Amended Complaint are duplicative of those already adjudicated in *Makhnevich I* (*see Id.*), the court's Memorandum & Opinion in *Makhnevich I* precludes them from being relitigated here.

material fact for trial, and Defendants are thus entitled to summary judgment.

### i. Factual Background

In sum, Plaintiff alleges that over the course of her attempt to appeal the state court judgment entered against her, Defendant Bougopoulos submitted a "fraudulent affirmation citing having difficulty 'recalling' the stipulation as signed and opposing Plaintiff's motion based on this representation which Bougopoulos knew or should have known was false." (Am. Compl. ¶ 44.)

Plaintiff alleges, *inter alia*, that Bougopoulos' representation was "directed to Plaintiff to misguide her and make her believe that she could not proceed with an appeal as intended and thus would have to concede with the fraudulently obtained alleged debt collection judgment," "Bougopoulos knew that [Plaintiff's motion] would have been denied if the [state] Court sided with Bougopoulos version of events and lack of 'recollection' of the signed stipulation in full," and "[Plaintiff] felt trapped and did not know whether she could present the proper sequence of events to the [state] Court for fair resolution."[7] (*Id.* ¶¶ 45, 48, 50.)

---

[7] As this court stated in *Makhnevich I*, Plaintiff has been cautioned that she could not prevail "on any claims that would undermine the state court's determination that the common charges were legitimate," and that she would need to show that Defendants "violated the law by the manner in which they engaged in debt collection or on a basis other than one that disputes the

Plaintiff further alleges that Bougopoulos "retracted his statement and finally recollected to the previously signed stipulation just hours before Plaintiff's Reply was due making it impossible for Plaintiff to timely submit Bougopoulos [sic] corrected 'recollection' of the stipulation" and that "[a]s a direct result of Bougopoulos misrepresentation," her reply was one day late and rejected by the state court as untimely. (Am. Compl. ¶¶ 51-52.)[8]  The Court liberally construes these allegations as most closely asserting a violation under § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

### ii. Legal Standard

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person

---

legitimacy of the charges as found by the state court." *See Makhnevich I*, 2022 WL 939409, at *4.  To the extent Plaintiff refers to "illegality of the purported consent" and "fraudulently obtained alleged debt collection judgment" in reference to the underlying state court proceedings, this court reiterates that her unfounded statements cannot sustain her claim in this action.  (Am. Compl. ¶¶ 42, 45.)

[8] As an initial matter, the court finds that Plaintiff mischaracterizes the Bougopoulos affirmation at issue.  The Amended Complaint alleges that the "fraudulent affirmation" cited Bougopoulos' "difficulty 'recalling' the stipulation as signed."  (*Id.* ¶ 44.)  Mr. Bougopoulos affirms: "[Y]our affirmant believed (which was true) [the transcript] was settled. However, because I was not 100% sure, I noted in my affirmation, in good faith, that to the extent it was not settled, Plaintiff could not receive relief from the App. Term."  (Bougopoulos Decl. ¶ 36.)  Defendants corroborate Mr. Bougopoulos' statement by submitting the very affirmation at issue.  The Bougopoulos affirmation in fact states the following: "It is my recollection that such transcripts were settled on consent. However, to the extent they were not, Appellant will need to have them settled."  (08/11/20 Aff. at 5.)

who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Felberbaum v. Mandarich Law Grp.*, 2022 WL 256507, at *4 (E.D.N.Y. Jan. 27, 2022) (citation omitted). Here, only the third requirement is in dispute: whether Defendants in fact "engaged in an act or omission in violation of the FDCPA's requirements."[9]

As Plaintiff notes, the Supreme Court has held that the FDCPA "applies to the litigating activities of lawyers." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). As this court noted in *Makhnevich I*, however, the *Heintz* Court also acknowledged in dicta that applying the FDCPA to litigation activities could result in "anomalies." *Id.* at 296; *see also Makhnevich I*, 2022 WL 939409, at *13-14. Perhaps to be mindful of those anomalies, "courts in this Circuit have been reluctant to impose liability under the FDCPA for statements made . . . during the course of debt collection litigation." *Gutman v. Malen & Associates, P.C.*, 512 F. Supp. 3d 428, 431 (E.D.N.Y. Jan. 10, 2021) (citing *Lautman v. 2800 Coyle St. Owners Corp.*, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014) (collecting cases)). This reluctance is because "the FDCPA's central purpose of 'protecting unsophisticated

---

[9] The court relies on its previous findings in *Makhnevich I* that the first two requirements were met. *See Makhnevich I,* 2022 WL 939409, at *5-6.

consumers from unscrupulous debt collectors' is not implicated in state court proceedings, where litigants 'enjoy myriad procedural and substantive protections from fraudulent and deceptive practices.'" *Lautman*, 2014 WL 4843947, at *12.

### iii. Application

Even assuming, arguendo, that the allegedly offending language in the Bougopoulos affirmation was a misrepresentation, the court finds that it did not constitute a violation of § 1692e. As an initial matter, the representation was made in an affirmation in opposition which, by definition, was addressed to the state court, not to Plaintiff. (08/11/20 Aff.) As a result, it is already "on the outer bounds of the FDCPA's applicability." *See Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) ("[T]he FDCPA's purpose . . . **is not implicated when a debtor is instead protected by the court system and its officers.**") (emphasis added). Importantly, Plaintiff has failed to come forward with sufficient evidence to allow a reasonable jury to conclude that Defendant Bougopoulos' representation was material, as is required in this Circuit. The Second Circuit has held that § 1692e includes a materiality requirement. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) ("[A] false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated [consumer].") (citation omitted). Indeed, "mere technical

falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e." *Id.* at 86 (internal quotations and citation omitted); *see also Gutman*, 512 F. Supp. 3d at 431 ("A misrepresentation to the state court concerning a procedural defect that does not mislead plaintiff in her repayment of or challenge to the debt is thus not a violation of the FDCPA."). As noted above, whether a communication complies with the FDCPA's requirements "is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk*, 918 F.3d at 239.

Despite Plaintiff's allegations, the evidence in the record belies the notion that Bougopoulos' representation was "misleading or deceptive as to the nature or legal status of [her] debt" or that it would have "prevented the least sophisticated customer from responding to or disputing the action." *Gabriele v. Am. Home Mortg. Servicing, Inc.,* 503 F. App'x 89, 95-96 (2d Cir. 2012); *see also Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018) (holding that whether a least sophisticated consumer would be misled is a question of law and therefore can be decided on summary judgment).

The court finds that even if, arguendo, Defendant Bougopoulos' statement is considered akin to "mere technical falsehoods that [mislead] no one," the Second Circuit, in the context of a motion to dismiss, previously has held that such statements do not constitute valid FDCPA claims. *See Gabriele*,

503 F.App'x at 95 (citing *Donohue v. Quick Collect*, 592 F.3d 1027, 1033-34 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.")). In *Gabriele*, the plaintiff alleged that the opposing law firm "falsely stated that it had forwarded both exhibits to the [state] complaint; submitted an affidavit incorrectly representing that there were no set-offs or counterclaims; filed an unsigned affidavit; and misrepresented that [plaintiff] was ineligible for a federal loss mitigation program when in fact he was under consideration for such a program in mediation." *Id*. at 92, 96.  The Second Circuit noted that even if those filings were false, they would not mislead the least sophisticated consumer "into believing that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address."[10]

---

[10] The *Gabriele* court noted that the filings, even if false, would not mislead the least sophisticated consumer "particularly [one] represented by counsel." *Gabriele*, 503 Fed. App'x at 95.  To the extent this may be viewed as a distinction between *Gabriele* and the instant case, this court finds that the word "particularly" makes plenty clear that the Second Circuit's holding applies to all consumers, not only those represented by counsel.  Further, although Plaintiff here is *pro se*, she has been actively engaged in litigation since at least 2015, when Defendant law firm first filed a complaint against her in state court.  By the time of the allegedly violative communication in August 2020, Plaintiff had proceeded *pro se* in multiple proceedings in both state and federal court, including but not limited to: proceeding *pro se* in *Makhnevich I*; in the December 7, 2018 attorney's fee

Here, Plaintiff has submitted as part of the state court record the "Appellant's Affidavit in Support of her Motion for Administrative Relief and/or Leave to Amend Notice of Appeal," which she filed on August 4, 2020. (ECF No. 38-17 at 3, 7.) As part of her Affidavit, Plaintiff submitted a "Stipulation as to Correctness of Transcripts" that she and Mr. Bougopoulos signed on April 2, 2019. (*Id.* at 15; Am. Compl. ¶ 50.) As stated above, Defendant Bougopoulos served the affirmation at issue via email to Plaintiff on August 13, 2020. (08/11/20 Aff. at 1.) The record shows that very soon after Plaintiff became aware of Bougopoulos' alleged misrepresentation — whether it was August 13, 2020, as the 08/11/20 Affirmation shows, or whether it was August 18, 2020, as ¶ 44 of the Amended Complaint alleges — she requested to adjourn the return date for more time to file her reply. Plaintiff's adjournment request is evident in an email Plaintiff submitted as part of the record, showing that on August 26, 2020, the state court granted Plaintiff's letter request for more time to reply, and ordered Plaintiff to re-serve and re-file by September 2, 2020. (ECF No. 38-22 at 1.) A misrepresentation is especially not "material" when the consumer — as is the case here — successfully sought and received redress from state court for the alleged wrong.

---

hearing in state court (ECF No. 38-17 at 22); and proceeding *pro se* in yet another, unrelated, action against other defendants in the Southern District of New York. *See Makhnevich v. MTGLQ Investors, L.P.*, 2021 WL 3406484 (S.D.N.Y. Aug. 4, 2021).

*Cf. Gutman*, 512 F. Supp. 3d. at 431 (holding that the alleged misrepresentation was "not material" because plaintiff "successfully challenged the action by moving to vacate the default judgment, which defendant agreed to do").

Even though Plaintiff alleges that Bougopoulos' representation was "directed to Plaintiff to misguide her and make her believe that she could not proceed with an appeal as intended and thus would have to concede with the fraudulently obtained alleged debt collection judgment," she has failed to come forward with sufficient evidence that she *was* misguided or *did* actually believe that she could not proceed with an appeal as intended. *See Gutman*, 512 F. Supp. 3d. at 432 (noting that "the evidence does not suggest" that the alleged misrepresentation at issue "misled or deceived [the plaintiff] as to the legal status of the debt or prevented her from responding to or disputing the action"). Plaintiff's allegation that the misrepresentation caused her to "feel[] trapped" and unsure as to "whether she could present the proper sequence of events to the [state] Court for fair resolution" is, in fact, belied by the evidence she herself has submitted.

The court also notes the rationale that "if a consumer is aware of the false statement, then such a person cannot be misled by that statement he or she knows to be false." *Jensen v. Pressler & Pressler, LLP,* 2014 WL 1745042, at *5 (D.N.J. Apr. 29, 2014), *aff'd sub nom.*, *Jensen v. Pressler & Pressler*, 791 F.3d 413

(3d Cir. 2015) (citing *Kromelbein v. Envision Payment Sols., Inc.,* 2013 WL 3947109, at *9 (M.D. Pa. Aug. 1, 2013) ("Even the least sophisticated consumer would not be misled by a statement that he knows to be false.")).  Finally, even a pro se plaintiff "cannot simply rely on the allegations in [the] complaint to withstand summary judgment." *See Pierre v. Air Serv. Sec.*, 2016 WL 11396816, at *4-5 (E.D.N.Y. July 28, 2016).  As such, Plaintiff has not come forward with sufficient evidence to allow a reasonable jury to find in her favor, and the court finds, as a matter of law, that the lone representation at issue was not a violation under § 1692e, or § 1692f, of the FDCPA.[11]

---

[11]  The court repeats that it construes the allegations relating to the Bougopoulos affirmation as arising under § 1692e.  Plaintiff only cites § 1692e twice in her Opposition, both times without making any actual arguments related to § 1692f.  (Pl. Opp. at 19-20 ("Section 1692f prohibits debt collectors from using any 'unfair or unconscionable means to collect or attempt to collect any debt.'"); *Id.* at 23 ("Defendants violated the FDCPA, §§ 1692e and 1692f, by making false, deceptive, and misleading representations and engaging in unfair and unconscionable practices.").)

To the extent there may be a § 1692f claim embedded in the Amended Complaint, the court finds there is no genuine issue of material fact requiring a trial on such a claim.  Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  This provision "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 166 (2d Cir. 2020) (citation omitted).  Although § 1692f and other FDCPA provisions are not "mutually exclusive," *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017), Plaintiff does not "identify any misconduct beyond that which [she] assert[s] violate[s] other provisions of the FDCPA." *Scaturro v. Northland Grp., Inc.*, 2017 WL 415900, at *4 (E.D.N.Y. Jan. 9, 2017) (citation omitted).  In any event, having reviewed the record, the court concludes that, as in *Makhnevich I*, Plaintiff has not come forward with sufficient evidence for a reasonable jury to find that Defendants used any unfair or unconscionable means to collect her debts to the Condo Board.

Finally, Plaintiff alleges that she "incurred additional costs, fees, travel fees and process service fees" as a result of Bougopoulos' alleged misrepresentation.  (Am. Compl. ¶ 56.)  The FDCPA, however, "does not guarantee consumers an efficient or thrifty resolution of their putative debt." *Gabriele*, 503 Fed. Appx. at 95.[12]  Neither is the FDCPA an appropriate vehicle for Plaintiff to recover state court litigation costs where she did not prevail.

## II.  ADA Title III Claim

### A. Factual Background

On April 18, 2018, the state court awarded summary judgment to the Condo Board against Plaintiff as to liability for Plaintiff's unpaid condominium common charges and fees.  (Pl.'s 56.1 ¶ 3; ECF No. 37-20 at 3-6.)  After a December 2018 jury trial and an attorney's fees hearing conducted in two parts, the state court ordered that judgment be entered against Plaintiff "in the total amount of $16,264.62, together with statutory costs and

---

[12] Plaintiff also alleges she experienced "additional episodes of excessive worry, severe headaches, in addition to stomach aches" as she awaited the state court's decision on whether she could re-serve her reply with Mr. Bougopoulos' corrections.  (Am. Compl. ¶ 55.)  This court construes those allegations as going to the issue of whether Plaintiff has sufficient Article III standing to bring an FDCPA claim.  Just as the court found in *Makhnevich I*, the court again finds that Plaintiff has standing, based on her allegations in the Amended Complaint in the instant action.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *see also, e.g.*, *Benjamin v. Rosenberg & Assocs.*, 2021 WL 3784320, at *5-8 (D.D.C. Aug. 26, 2021) (finding FDCPA claims adequately pleaded based on allegations of headaches and stomach aches, among other things); *Makhnevich I*, 2022 WL 939409, at *4 n.6.

statutory interest to commence from July 1, 2017." (ECF No. 37-21 at 3; *see also* Pl.'s 56.1 ¶ 4.) That Decision & Order noted that the "attorneys' fees due and owing associated with this matter will be issued in a separate order and judgment after an attorney fee hearing has concluded." (ECF No. 37-21 at 3.)

### i. *Plaintiff's First Adjournment Request*

The attorney's fees hearing was initially held on December 7, 2018 with all parties present. The hearing was then adjourned until December 11, 2018. (Pl.'s 56.1 ¶¶ 4-5; ECF No. 38-17 at 22-23, 80.) At 10:22 p.m. on Monday, December 10, 2018 — the night before the scheduled hearing — Plaintiff emailed Becky Wu (Court Attorney to Judge Richard J. Montelione, the presiding state court judge) and Defendant Bougopoulos, requesting an adjournment of the December 11th hearing due to a doctor's order. (ECF No. 37-22 at 2.) Plaintiff attached a doctor's note that stated that Plaintiff had been seen for a "sick visit" on December 10th, and that she was "able to return to work" with "no restrictions" on December 13, 2018. (*Id.* at 6.) Mr. Bougopoulos responded to the email chain, apparently consenting and offering his availabilities for a rescheduled hearing, "if Judge agrees to adjourn." (ECF No. 37-23 at 3.) On the morning of December 11, 2018, Ms. Wu emailed, in part: "Dear Ms. Mekhenvich [sic]: Subject to the consent of Mr. Bougopoulos, Judge Montelione has asked me to contact you in order to schedule a conference call with you and

Dr. Agnicha Muzeau to inquire as to why you cannot attend the scheduled hearing today.  Judge Montelione does not accept the general description of 'sick visit' from a physician who is not your primary care doctor. Failure to contact chambers in order to schedule this phone call will result in the hearing proceeding as schedule." (*Id*. at 2-3.)  Mr. Bougopoulos replied that he had "no objection to the court contacting Ms. Makhnevich for the purposes below." (*Id*. at 2.)  The hearing was then adjourned to December 20, 2018 at 2:15 p.m. and marked "final" in bold.  (Pl.'s 56.1 ¶ 7; ECF No. 37-23 at 2.)

### ii. Plaintiff's Second Adjournment Request

On December 19, 2018 at 5:33 p.m. (the day before the rescheduled hearing was supposed to take place) Plaintiff emailed Ms. Wu and Mr. Bougopoulos stating, in the third person: "Stacy Makhnevich is ordered full leave as a result of pregnancy complications." (ECF No. 37-24 at 2.)  Plaintiff attached a document to that email labeled "Medical Excuse Note" from Essex Women's Health Center.  (*Id*. at 5.)  The note, dated December 17, 2018, stated: "This certifies that Stacy Makhnevich [has been] seen in this office for professional medical attention [on December 17, 2018 at 1:00 p.m.].  Please excuse patient from [work due to pregnancy] from 12-17-18 to 1-8-19.  We urge employers and schools to consider this as excused absence." (*Id*. at 3-5.)  On the basis of that note, Plaintiff requested that the court "[p]lease adjourn

23

the hearing from December 20th" to an offering of dates in mid-to-late January 2019. (*Id.* at 2.)

In an email sent to both Ms. Wu and Ms. Makhnevich on December 19, 2018 at 6:09 p.m., Mr. Bougopoulos responded as follows:

> Dear Ms. Wu:
>
> Please be advised that it appears from email and note in Ms. Makhnevich's email below that she received the purported physician directive (though no name is listed) on 12/17 /18, which was Monday of this week. However, it is only on 12/19/18 at approximately 5:33pm (2 days later), that Ms. Mahnevich has decided to make her request for an adjournment, the evening before the 12/20/18 court date which the Court marked "final" (see screenshot below).
>
> Ms. Makhnevich could have made the request to adjourn the court date for tomorrow immediately on 12/17 /18 to reduce any stress on the Court and myself, but apparently chose not to. I will remind the Court that Ms. Makhnevich also requested an adjournment from the 12/11/18 [sic] court via email on 12/10/18 at approximately 10:30pm, though at least that medical letter was dated on the same date the request was made.
>
> Thus, under the circumstances, I cannot consent to the adjournment and believe the Court should deny the request and allow the legal fees hearing to proceed.
>
> Be further advised that I will be in our office in Yonkers in the morning tomorrow and would appreciate the Court's decision on Ms. Makhnevich's adjournment request, whichever way the Court decides, if possible, by 11am. This is requested to try to reduce inconvenience to myself for any (un)necessary travel to Brooklyn.

> If the Court grants the adjournment, I am
> available as of now [i]n January: 1/10 (all
> day); 1/17 (after 1pm), 1/22 and 1/23 (all
> day). February I am available 2/4 and 2/5 (all
> day)[.]

(ECF No. 37-25 at 3-4.)

At 9:51 a.m. on December 20, 2018, Ms. Wu sent the following email to both Defendant Bougopoulos and Plaintiff:

> Dear Ms. Makhnevich,
>
> You are directed to call chambers (at 347-404-9097) regarding your adjournment request at 10:15 a.m. today. The Judge requests an authorization from you in order to speak to your physician regarding this medical note, as well as the name of the physician and an explanation as to why this request was not made at an earlier time. **If you do not call chambers with this information at 10:15 a.m. your adjournment request will be denied.** Note that the call to chambers is not a guarantee that this matter will be adjourned but is for consideration in light of the circumstances.
>
> You are reminded that [sic] previous time that you requested an off-hours adjournment request the night before the hearing, you did not respond to my email or a call from chambers the morning of the hearing but the Judge allowed the adjournment as a courtesy.
>
> Mr. Bougopoulos, If this matter is adjourned, you will be notified expediently.

(*Id.* at 3.)

In an email sent at 11:11 a.m. that same day, Mr. Bougopoulos stated: "I have not heard back from the Court and was following up to see if a decision was made on Ms. Makhnevich's

adjournment request." (*Id.* at 2.)   Ms. Wu replied shortly thereafter at 11:25 a.m.: "Dear Parties, As we have not heard any further correspondence or any further communication from Ms. Makhnevich, a telephone call or otherwise, as directed in the prior email, at this juncture the continued hearing will proceed as scheduled. Please be guided accordingly." (*Id.*)

At 6:00 p.m. that day, Plaintiff Makhnevich emailed Ms. Wu (copying Mr. Bougopoulos) as follows:

> Attn: Chambers of Hon Richard Montelione
> I was having morning sickness all morning and afternoon. Wasnt able to check my emails. Did not receive a single phone call from neither the Chambers, nor the Court, nor Mr Bougopoulos.
>
> Due diligence was exercised in this matter of complicated pregnancy to be treated as temporary disability. The arrangements were made to alert the court via email and facsimile (with confirmation receipt on 12/19/2018).
>
> Specific instructions were provided by a multi specialty high risk obstetrics practice, Essex Women's Center, pertaining to pregnancy and "excused absence" with specified dates.
>
> While the Court's decision and discretion are understood, it's, no doubt, Pregnancy Discrimination. Thank you for you [sic] time and consideration[.]

(ECF No. 37-26 at 2.)

The attorney's fees hearing thus proceeded as scheduled on December 20, 2018, and an order was ultimately issued granting attorney's fees to the Condo Board. (Pl.'s 56.1 ¶ 10.)  Plaintiff

now alleges that Defendants' withholding of consent to her second request for adjournment constituted a violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. (Am. Compl. ¶¶ 63-81, 84-91.) The court finds that Plaintiff has failed to raise a genuine issue of material fact from which a jury could infer disability-based discrimination, and thus grants summary judgment for Defendants on Plaintiff's ADA claim.

B. <u>Threshold Issues</u>

Before an assessment of the merits, the court will address several issues.

### i. *Plaintiff's Objection regarding Local Rule 12.1*

Defendants' motion is brought under Fed. R. Civ. P. 12, governing motions to dismiss, as well as Fed. R. Civ. P. 56, governing summary judgment. Plaintiff submitted a letter motion objection "Regarding Defendants' Failure to Comply with Local Rule 12.1" on July 17, 2021, almost a week after the motion was fully briefed. (ECF No. 40.) Plaintiff's objection asserts that Defendants' motion was "unexpectedly and improperly served and filed as no motion to dismiss was discussed during the pre-motion conference conducted on February 28th, 2022. During [Plaintiff's] discussion of the events with an unrelated party [a] few days ago, Plaintiff discovered that Defendants failed to abide by Local Civil Rule 12.1, which requires that notice is given to pro se litigants

opposing a Rule 12 motion supported by matters outside the pleadings." (*Id.* at 1.)

First, it is well-established that a "pro se plaintiff who is aware of the rights that Local Rule 12.1 is designed to give notice of, and who is not prejudiced by the defendants' failure to comply with the Rule, is not entitled to prevail [on a motion to dismiss] on the basis of the defendants' failure." *Francis v. Accubanc Mortgage Corp.*, 2020 WL 2086038, at *6 (S.D.N.Y. Apr. 30, 2020) (citing *Carvel v. Franchise Stores Realty Corp.,* 2009 WL 4333652, at *11 (S.D.N.Y. Dec. 1, 2009)). Plaintiff here has clearly been aware of her rights. As Defendants point out, Plaintiff raised the argument herself in another case that she filed, *Makhnevich v. MTGLQ Investors, L.P.*, 2021 WL 3406484 (S.D.N.Y. Aug. 4, 2021). (*See also* Plaintiff's Opposition to Defendants' MTGLQ Investors L.P. and Selene Finance L.P. Motion to Dismiss, No. 19-cv-00072-AT-SN (S.D.N.Y. Dec. 21, 2020), ECF No. 90 at 3, 5.) Plaintiff is clearly aware of the rights about which Local Rule 12.1 is designed to provide notice.

Plaintiff also argues, *inter alia*, that she was "further prejudiced as she only has limited number of pages that she reserved for her opposition to summary judgment" and "has limited time to research additional statutes and case laws pertaining to a motion to dismiss." Page limits imposed by courts are common course in litigation, and *pro se* litigants do not have unlimited

time to respond, particularly when Plaintiff has had previous experience opposing a Rule 12 motion to dismiss in *Makhnevich v. MTGLQ Investors, L.P.*, 2021 WL 3406484 (S.D.N.Y. Aug. 4, 2021). *Cf. Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir 1999) ("The right of access to the court does not afford prisoners unlimited access to prison law libraries.") (internal quotations and citation omitted). Moreover, Defendants here served Plaintiff with an appropriate Local Rule 56.1 statement and Local Rule 56.2 Notice for *pro se* litigants. Thus, Plaintiff received appropriate notices in connection with Defendants' summary judgment motion. Finally, even if Plaintiff had successfully demonstrated that the lack of Rule 12.1 Notice prejudiced her, her objection is ultimately moot for the reasons explained below.

### ii. *Defendants' Rule 12(b)(1) Motion*[13]

Defendants' Rule 12(b)(1) motion involves Plaintiff's administrative Complaint, filed with the New York State Division of Human Rights (NYSDHR) on December 17, 2021.

---

[13] Defendants argue that the NYSDHR Complaint and Order bars this court from hearing Plaintiff's New York State and NYC Human Rights Claims. (ECF 37-41 ("Defs. Mem.") at 13-14.) As the court declines to exercise supplemental jurisdiction over these claims, *infra*, the court declines to address this issue.

Separately, Defendants also moved to dismiss Plaintiff's FDCPA claim (as alleged in Plaintiff's First Cause of Action) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), based on the "other suit pending" doctrine. (ECF No. 37 at 1.) The court deems the Defendants' motion moot, as the court has already granted Defendants summary judgment on Plaintiff's additional FDCPA claim.

On December 9, 2021, Defendants filed an Amended Answer with Counterclaim in the instant action, in response to Plaintiff's Amended Complaint.   In their Counterclaim, Defendants sought reasonable attorneys' fees incurred as a result of defending against Plaintiff's discrimination claims.  (ECF No. 13 at 8-9.) Plaintiff alleged in her NYSDHR Complaint that Defendants' counterclaim somehow constituted "retaliation."[14]  (ECF No. 37-34 ("NYSDHR Compl.") at 6, 13.)  Though Plaintiff filed the NYSDHR Complaint as a purported retaliation claim, it is, in fact, a copy-and-paste duplicate of most of the discrimination-related allegations in the instant action's Amended Complaint.  (*Compare* NYSDHR Compl. at 6-13, *with* Am. Compl. ¶¶ 63, 66-80.)  In addition, Plaintiff responded to the NYSDHR form question "In what county or borough did the violation take place?" with "[W]estchester; immediate refusal of accommodations via email."  (NYSDHR Compl. at 3.)  Further, in the section of the NYSDHR form entitled "Acts of alleged discrimination: What did the person/company you are complaining against do? Check all that apply," Plaintiff selected:

- denied access to public accommodation
- discriminatory advertisement, communication, or notice
- denied equal advantages, facilities, and privileges of public accommodation
- denied reasonable accommodation for disability

---

[14] The court notes that Plaintiff also attached part of her NYSDHR Complaint as her exhibit, ECF No. 38-2.  Plaintiff's exhibit does not include the "Complaint Form" that she completed along with her written NYSDHR Complaint. As such, the court will cite to Defendants' exhibit, ECF No. 37-34, which provides the complete form and NYSDHR Complaint.

- harassed/intimidated (other than sexual harassment) on any basis indicated above

(*Id.* at 4.)

In a "Determination and Order After Investigation," dated January 12, 2022, NYSDHR determined there was "NO PROBABLE CAUSE to believe that the respondents have engaged in or are engaging in the unlawful discriminatory practice complained of" and that the "evidence does not support a probable cause finding because Complainant has failed to state a claim under the Human Rights Law. The record shows that Respondents and Complainant are parties to litigation before the federal court.[15] In that capacity, Respondents are not acting in any capacity as a place of public accommodation. The Human Rights Law does not bar litigants from raising objections to an opposing party's request for a court adjournment." (ECF No. 37-35 ("DHR Order") at 3-4.) The court will now address Defendants' arguments related to Plaintiff's NYSDHR Complaint.

**First**, Defendants argue that the Rooker-Feldman doctrine precludes the court from considering Plaintiff's discrimination claims. (ECF No. 37-41 ("Defs. Mem.") at 14-15.) The Rooker-Feldman doctrine precludes federal court jurisdiction over "cases brought by state-court losers complaining of injuries caused by

---

[15] The erroneous reference by the NYSDHR Determination and Order to "federal court," rather than "state" court," is discussed *infra*.

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Gribbin v. N.Y. State Unified Ct. Sys.*, 838 Fed. Appx. 646, 647 (2d Cir. 2021) (*citing Exxon Mobil Corp. v. Saudi Basics Indus. Corp.*, 544 U.S. 280, 284 (2005)). This doctrine applies where the federal-court plaintiff: (1) "lost in state court," (2) "complains of injuries caused by a state-court judgment," (3) "invites the district court to review and reject that state-court judgment," and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (internal quotation and citation omitted).

Defendants argue that Rooker-Feldman bars this court from allowing Plaintiff's discrimination claims to proceed, because the basis of those claims is Defendants' denial of consent to adjournment in the state court case. (Defs. Mem. at 14-15.) The court, however, finds that Plaintiff's discrimination claims do not invite this court to review and reject the underlying state court judgment. The court agrees with Plaintiff's characterization that she is asking the court "to consider whether her rights were violated before/during the proceedings and whether she is entitled to damages for those violations," and that she is not asking this court to "'review and reject' the state court's

judgment awarding Defendants over $21,047 in attorney fees." (Pl. Opp. at 15.)

**Second**, Defendants argue that Plaintiff's ADA claim is barred by collateral estoppel and/or res judicata based on the NYSDHR's Decision & Order described above. (Defs. Mem. at 24-28.) The doctrine of collateral estoppel (issue preclusion) bars "an issue of ultimate fact [that] has once been determined by a valid and final judgment" from being "litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994). The similar but separate doctrine of res judicata (claim preclusion) provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Additionally, under New York State law, res judicata also bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* at 790.

The NYSDHR Decision & Order states: "Complainant sought an adjournment of the scheduled hearing in federal court grounded in reasons related to her pregnancy and submitted a medical note to support that request. Respondents questioned the medical note and refused to consent to the adjournment. The federal court nonetheless granted Complainant's request for the adjournment."

As demonstrated by the record and as explained in detail above, Plaintiff's second adjournment request at issue in this federal action occurred in state, not federal, court proceedings, and the state judge, Judge Montelione, did not grant said request. This court refrains from deeming the NYSDHR Order incorrect or unsound, but notes that, on its face, the Order does not refer to the state court proceedings underlying Plaintiff's discrimination-related claims. As such, the court finds that neither collateral estoppel nor res judicata bars this court from proceeding to assess the ADA claim on the merits.

As the court denies Defendants' motion to the extent it is brought pursuant to FRCP 12(b)(1) and 12(b)(6), the court finds that Plaintiff's 12.1 notice argument is moot, and now proceeds to its summary judgment analysis of Plaintiff's ADA claim.

C. Merits

Title III of the ADA prohibits discrimination against people with disabilities in the context of "public accommodations." "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Based on the record, the court holds that a reasonable factfinder could not find in favor

of Plaintiff on her claim that Defendants' withholding of consent on her second adjournment request constitutes a Title III violation.

To establish a violation of Title III of the ADA, a plaintiff must establish (1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff **within the meaning of the ADA**. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (emphasis added) (internal quotations omitted); *see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (formulating prong three as: "that [the plaintiff] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reasons of [his or her] disability") (internal citation and quotations omitted). As to the first requirement, Plaintiff alleges that she had a "disability during pregnancy [that] limited [a] major life activity within the meaning" of the ADA. (Am. Compl. ¶ 90); *see* 42 U.S.C. § 12102(1)(A). As the parties do not dispute that Plaintiff was disabled within the meaning of the ADA, the court will proceed to the rest of its Title III analysis.

Despite the complicated history of the underlying events above, whether Plaintiff has established that Defendants

35

discriminated against her within the meaning of the ADA can ultimately be summarized by one question:  Does Title III require the defendant law firm to consent to the plaintiff's adjournment request because the plaintiff has a disability within the meaning of the ADA, despite the fact that the state court denied the plaintiff's adjournment request, and despite the fact that the law firm was in adverse proceedings against the Plaintiff, and thus clearly not operating as "a public accommodation" in that context? The court finds that Title III imposes no such tortured requirement.

Plaintiff argues that Defendants were bound by Title III with respect to her adjournment request because, under § 12181(7)(F), an "office of an accountant or lawyer" is considered "public accommodations for purposes of" Title III.  Although Defendants (as a law firm and a lawyer of that firm) may be viewed as "operating a place of public accommodation" under the ADA, Plaintiff's argument fails because Defendants were clearly not operating as "a place of public accommodation" *in the specific context of the state court litigation of brought by Defendants on behalf of their clients against Plaintiff*, and thus, Plaintiff cannot establish that defendants discriminated against her "**within the meaning of the ADA**." *See Roberts,* 542 F.3d at 368 (emphasis added).

36

A plain reading of the statutory text alone makes clear that "Title III prohibits a place of public accommodation from discriminating on the basis of disability when providing *access to* whatever goods and services [are] ordinarily provided at that place of public accommodation." *See, e.g., Dominguez v. Banana Republic, LLC*, 2020 WL 1950496, at *6 (S.D.N.Y. Apr. 23, 2020).  Plaintiff here alleges that "[u]pon information and belief, similar rescheduling accommodations have been routinely provided to non disabled parties upon 2-3 of their consecutive requests without any requests for judicial review and without any objections by the Defendants." (Am. Compl. ¶ 79.)  To the extent Plaintiff believes Defendants were obligated to consent to her second adjournment request because she believes they "routinely" provide them to non-disabled parties, this bears no merit nor any relevance to the question of law here.[16]  Plaintiff's own submitted evidence demonstrates as much.

In support of her position, Plaintiff relies on a settlement agreement between the United States and a law firm, Peroutka and Peroutka, P.A. ("Peroutka"). (ECF No. 38-16.)  The settlement resolved an investigation by the Department of Justice ("DOJ") under Title III, conducted after complaints by two deaf individuals.  Complainants had alleged Peroutka violated Title III

---

[16] The court also notes that repeated invocation by Plaintiff of the words "accommodate" or "accommodation" are obviously insufficient to bring Plaintiff's claim within the ambit of the ADA.

"by refusing to take relay calls when the complainants called to resolve disputes involving alleged unpaid debts." The Settlement Agreement states:

> Peroutka acknowledged that it had directed its employees to refuse to accept calls made by individuals with disabilities through relay services and, instead, directed the callers to call back when a manager was available. Peroutka employees followed these instructions, refusing to take relay calls and telling callers using the relay service they had to call back when a manager was available to take the call.

(*Id*. at 1-2.)

Because it was operating as a law firm and collection agency while receiving those calls, Peroutka's receipt of those calls was obviously a good, service, facility, privilege, advantage, or accommodation within the meaning of § 12182(a). Because, in its capacity as a collection agency and law firm, Peroutka accepted calls made by non-disabled individuals, its refusal to then accept calls from disabled individuals using relay services was a policy implemented "on the basis of disability."

The most obvious good or service that Defendants here would provide is legal services.[17] It is obvious, however, that

---

[17] As Plaintiff notes, the ADA's protections reach beyond physical spaces, e.g., the physical office of a law firm such as Defendant Novick Firm. *See Pallozzi v. Allstate Life Ins. Co.,* 198 F.3d 28, 32 (2d Cir. 1999) (noting that Title III's mandate "suggests to us that the statute was meant to guarantee [disabled individuals] more than mere physical access"); *Dominguez,* 2020 WL 1950496, *6 (noting that many courts have held that websites are places of public accommodation for the purposes of Title III and "read the word 'place' broadly to include every 'sales or rental establishment' and 'service establishment'"); *see also Del-Orden v. Bonobos, Inc.,* 2017 WL

Defendants were not providing a good or service to Plaintiff *when it was in adverse litigation proceedings brought by Defendants against Plaintiff*. Defendants' refusal to consent to Plaintiff's second adjournment request during litigation against Plaintiff is not remotely akin to law firms refusing to accept calls from disabled individuals regarding unpaid debts; or to an insurance company refusing to issue joint life insurance policies to disabled individuals; or to a website that sells goods but has accessibility barriers for the blind and visually-impaired. (*See* ECF No. 38-16); *see also Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999); *Martinez v. Gutsy LLC*, 2022 WL 17303830, at *1, 7 (E.D.N.Y. Nov. 29, 2022) (on a motion to dismiss, holding that plaintiff plausibly stated a claim of discrimination due to allegedly inaccessible website); *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *1 (S.D.N.Y. Dec. 20, 2017) (same).

Such cases, among many others, clearly demonstrate that Title III requires the non-discriminatory provision of goods, services, programs, or activities when the ADA-covered place of business or entity is, in fact, actually providing those goods, services, programs, or activities. It would be both an unsupported and illogical reading of Title III to hold that simply because a

---

6547902, at *1 (S.D.N.Y. Dec. 20, 2017) ("The Court today joins the growing number of courts to hold that commercial websites qualify as 'public accommodations' within the meaning of the ADA, such that the ADA's protections extend to blind persons who claim discriminatory access to websites.").

law firm is statutorily defined as a place of public accommodation, Title III somehow extends to conduct completely unrelated to the provision of goods, services, programs, or activities that law firms provide to the public — e.g., consenting to an adjournment request made by a legal adversary.   Although the court is sympathetic to Plaintiff's difficulties during her pregnancy, consent to an opposing party's adjournment request is, simply put, "not the kind of reasonable modification in policies that is required under the ADA to accommodate persons with disabilities." *Cf., Maxwell v. NYU*, 407 Fed. Appx. 524, 528 (2d Cir. 2010) (holding that disbursement of financial aid to a student who has been determined to be ineligible under federal law is not the kind of "reasonable modification" required under the ADA) (internal citation and quotations omitted).   Finally, the court also notes that — beyond the fact that the underlying events took place during the parties' adversarial legal proceedings — it is undisputed that "Defendants have never represented Plaintiff nor was she ever a prospective client of either Defendant."  (Pl.'s 56.1 ¶ 25.)   The two parties have never been, nor foreseeably will be, in a position where Plaintiff will be the recipient of Defendants' legal services, such that an allegedly discriminatory act by Defendants against Plaintiff would trigger Title III protections.

        In addition to the grounds articulated above, the court also finds that Plaintiff has failed to raise a genuine issue of

material fact regarding her ADA claim because Plaintiff has "offered no reason to believe" that Defendants' refusal to consent to a second adjournment was done "on the basis of" her disability. 42 U.S.C. § 12182(a); *see, e.g.*, *Maxwell*, 407 Fed. Appx. at 527-58 (in affirming a grant of summary judgment, holding that there was "no error" in district court's determination that plaintiff failed to raise a genuine issue of material fact with respect to his Title III claim because plaintiff "offered no reason to believe" that defendant's actions at issue were taken "on the basis of" plaintiff's alleged disabilities).

   As described above, Defendant Bougopoulos' December 19, 2018 email explains in detail that his grounds for refusal to consent were due to Plaintiff's two-day delay in requesting a second adjournment from the state court, and the fact that Plaintiff had already requested and received a first and "final" adjournment from the state court on December 11, 2018, *with Defendants' consent* (consent, which, Plaintiff does not appear to acknowledge nor concede in her Opposition nor the Amended Complaint). (ECF No. 37-25 at 3-4.) In his Declaration in this federal action, Defendant Bougopoulos also noted that he "was aware of the long, tortured history of [the state court] case." (Bougopoulos Decl. ¶ 31; ECF No. 37-15; ECF No. 37-20.) These explanations sufficiently demonstrate that Defendants' withholding of consent was not on the basis of Plaintiff's pregnancy. *See*

*Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 87 (2d Cir. 2004) (on affirming a grant of summary judgment, that plaintiff "produced no proof that was discriminated against . . . on account of her alleged disability").[18]

### III. Rule 56(d) Discovery

As part of her opposition to Defendants' motion, Plaintiff filed a signed affidavit in support of her request for discovery pursuant to Federal Rule of Civil Procedure 56(d). (ECF No. 38-24.)  For the reasons explained below and in light of the court's analysis above, Plaintiff's request is **denied.**

### A. Legal Standard

To request discovery when faced with a motion for summary judgment under Rule 56(d), "a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *3 (2d Cir. June 27, 2022) (citation omitted).

### B. Application

Plaintiff's affidavit states that she seeks the following:

---

[18] The record also demonstrates that in Defendant Bougopoulos' December 19, 2018 email, he provides his availabilities in January 2019 for the hearing, "[i]f the Court grants adjournment."  (ECF NO. 37-25 at 3-4.)

- "discovery from Defendants involved in overseeing proper handling or records and documents relating to Plaintiff's information relating to the debt, procedures and protocols relating to bookkeeping and storage of Plaintiff's information relating to the debt, detailed breakdown of all attorney fees assessed to Plaintiff, Defendants['] procedures relating to accommodations of consumers with disabilities"
- "written requests and deposition testimony on these topics:
    - Defendant Bougopoulos length of employment at Novick,
    - Defendant Bougopoulos duties and responsibilities as an employee and/or partner of Novick
    - Defendants' intent, and its maintenance of procedures to avoid the type of error that occurred in this matter
    - Communication by and between all employees, partners, staff of Defendant or their agents regarding all issues discussed in Plaintiff's Amended Complaint; and
    - Any investigation or review that Defendants performed pursuant to accommodations of consumers including disabled and FDCPA"

(ECF No. 38-24 at 3.)

Plaintiff fails on the second, third, and fourth elements of the *UBS AG* standard here.  Plaintiff does not describe how the information and facts she seeks are reasonably expected to raise a genuine issue of material fact as to any of her claims. Plaintiff only states in a general and conclusory manner that she requires this discovery "[i]n order to appropriately respond to the factual issues raised by Defendants" and that the "foregoing evidence is essential to demonstrate the existence of disputes concerning facts material to the disposition of this case." (*Id.* at 2-3.)  Plaintiff does not identify what specific "factual issues" or "disputes" she seeks to discover, let alone how her requested discovery might be relevant to defending against Defendants' motion for summary judgment.  *See, e.g., Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004) (holding that the district court did not abuse its discretion in denying plaintiffs' request for additional discovery on the grounds that plaintiffs "did not describe what they hoped [the requested] documents and records would show or how this would impact the court's decision").  Such general requests do not satisfy the standard for seeking Rule 56(d) discovery, and veer too close to mere "speculation as to what potentially could be discovered." *See Sura v. Zimmer, Inc.*, 768 Fed. Appx. 58, 59 (2d Cir. 2019).

Even if Plaintiff's 56(d) request for discovery were granted, the court finds that Plaintiff did not provide any

reasonable basis to conclude that discovery would yield evidence that Defendants' lack of consent to a second adjournment request was "on the basis" of her disability.  The court finds that the record of emails regarding Plaintiff's adjournment requests demonstrates sufficient evidence of the events that took place, and Plaintiff has not offered any evidence for the court to doubt the validity or completeness of that portion of the record.

Furthermore, Plaintiff has not described what efforts, if any, she has made to obtain the discovery she now seeks and why any such prior efforts to obtain the discovery were unsuccessful. Plaintiff argues that summary judgment should be denied as premature because she "requires additional time for investigation and research into defendants' purported facts."  The events underlying Plaintiff's FDCPA claim arose in August 2020, and the events underlying her ADA-related claim arose in December 2018. Plaintiff clearly had years to investigate or research either event, during and even prior to commencing her first and second overlapping federal lawsuits against Defendants.  As the initial complaint in this action was filed on August 17, 2021, Plaintiff has also had nearly a full year to pursue discovery prior to making her FRCP 56(d) request.  In sum, even with a generous reading provided to a *pro se* litigant, Plaintiff here has failed to meet the standard for acquiring discovery under FRCP 56(d).

Finally, as discussed above, this case is not the sort of "heavily fact bound case" that would not be amenable to summary judgment. *See Sali v. Zwanger & Pesiri Radiology Grp., LLP*, 2022 WL 1085508, at *7 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 819178 (E.D.N.Y. Mar. 18, 2022) (describing a limited legal issue that would only require a single document without additional discovery).   As discussed above, Plaintiff's amended complaint hinges on two discrete events for which the court has the necessary record — this is not a case in which many further facts are needed to determine whether there is a genuine issue of material fact.   For the stated reasons, Plaintiff's request for discovery pursuant to FRCP 56(d) is **denied.**

## IV.  State Law Claims

Plaintiff also asserts claims against Defendants under the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*   (Am. Compl. ¶¶ 92-118.)

Having granted Defendants' motion as to Plaintiff's federal FDCPA and ADA claims, the court declines to exercise supplemental jurisdiction over her NYHRL and NYCHRL claims.   *See* 28 U.S.C. § 1367(c)(3).   "In the 'usual case' in which 'all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point

toward declining to exercise jurisdiction over the remaining state-law claims.'" *Krow v. Pinebridge Invs. Holdings U.S. LLC*, 2022 WL 836916, at *15 (S.D.N.Y. Mar. 21, 2022) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)).  The court accordingly dismisses Plaintiff's NYHRL and NYCHRL claims without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to the FDCPA claim, ADA claim, and as to Plaintiff's claim for declaratory relief.  Plaintiff's claims under the NYHRL, N.Y. Exec. Law § 296 *et seq.*, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.* are **DISMISSED** without prejudice.

The Clerk of Clerk is respectfully directed to enter judgment accordingly in favor of Defendants, serve Plaintiff with a copy of this Memorandum and Order and the judgment, note service on the docket, and close this case.


**SO ORDERED.**

                                        /s/ Kiyo A. Matsumoto
                                        **Hon. Kiyo A. Matsumoto**
                                        United States District Judge
                                        Eastern District of New York

DATED:      January 15, 2023
            Brooklyn, New York

47